UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
BRUCE BLISS, ET AL.,

        Plaintiffs

        v.                      CIVIL ACTION NO.:
                                           10-10252-EFH

MARK FISHER, ET AL.,

        Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

October 21, 2010

HARRINGTON, S.D.J.

      The Massachusetts Office of the Inspector General (OIG) moves to quash a deposition subpoena requiring the appearance and testimony of an Assistant Deputy Inspector General, Daniel O'Neil. The subpoena was issued in this civil suit alleging malicious prosecution, civil rights violations and intentional torts arising from a criminal investigation conducted by the OIG and from criminal prosecutions resulting therefrom. All parties in the suit seek O'Neil's testimony. The OIG is not a party in the suit. The OIG asks this Court to recognize an evidentiary privilege that would prevent O'Neil from appearing at a deposition and from providing any testimony regarding the investigation. The OIG asserts that Massachusetts law recognizes such a privilege, under Mass. Gen. Laws ch. 12A, § 13, and that this Court should adopt the privilege pursuant to the inquiry set forth in In re Hampers, 651 F.2d 19 (1st Cir. 1981).

The Court declines to adopt such a privilege and concludes that, even if such a privilege were recognized, it has been waived in this case.

*Background*:

The plaintiffs' complaint arises out of events that occurred while they were acting as commissioners of the North Attleborough Electric Department ("NAED"), a municipal light and power company. In November 1998, the plaintiffs and NAED's General Manager, David Sweetland ("Sweetland"), presented to North Attleborough Selectmen a plan to use a portion of certain bond funds to create a dial-up internet service ("ISP") that would be regulated by the NAED, and made available to the residents of North Attleborough.

Plaintiffs allege that, beginning in 2004, the defendants, who at all times relevant were North Attleborough selectmen and other town officials, urged various agencies to conduct criminal investigations and to criminally prosecute the plaintiffs and Sweetland in an effort to gain political control over the NAED. Plaintiffs assert that defendants, among other things, pressed the OIG to investigate the potential misuse of the bond funds in creating the ISP. Plaintiffs claim that the defendants failed, however, to disclose to the OIG the fact that the plaintiffs and Sweetland had received approval for the creation of the ISP from the law firm of Ropes & Gray LLP, which acted as the town's bond counsel, or that the plaintiffs and Sweetland had made the North Attleborough Board of Selectmen aware of the bond counsel's approval in 1998. The OIG began its investigation of the matter in early 2005. At the conclusion of its investigation, the OIG issued a comprehensive report, in which it found that the plaintiffs and Sweetland had misused the bond funds. The OIG's report was posted on the its website.

In 2006, the Bristol County District Attorney brought criminal charges against the

plaintiffs and Sweetland. The trial of Sweetland was severed from the plaintiffs' trial and proceeded first. During Sweetland's trial, Assistant Deputy Inspector General O'Neil testified on behalf of the Commonwealth, describing the OIG's investigation into the matter. On the third day of the trial, the lead counsel from the Bristol County District Attorney withdrew the complaint against Sweetland when a videotape claimed to be exculpatory was discovered by defense counsel. The videotape recorded Sweetland's appearance before the North Attleborough Board of Selectmen in November 1998. The videotape showed Sweetland telling the Board of Selectmen the purposes for which the bond funds were being used and that he had consulted with bond counsel who had informed him that the expenditures were appropriate for use under the terms of the bond appropriations. After withdrawing its complaint, the court terminated the case by entering a finding of not guilty.

Despite the withdrawal of the Sweetland complaint, the Bristol County District Attorney's Office proceeded to trial against the plaintiffs. During a motion hearing prior to the plaintiffs' trial, an investigator from the OIG, by the name of Mr. Xenakis, testified regarding the documentation that the OIG had requested and received from North Attleborough town officials during the course of its investigation. The evidence presented at the plaintiffs' trial was essentially the same as the evidence presented at Sweetland's trial. Plaintiffs moved to dismiss on the basis of prosecutorial misconduct and also moved for a directed verdict of not guilty. The court granted the directed verdict, concluding that no evidence of criminal wrongdoing was presented but, at the request of plaintiffs' counsel, issued a Memorandum and Opinion, concluding that prosecutorial misconduct could have been the basis for the dismissal. The court noted in its Memorandum and Opinion that the videotape discovered at Sweetland's trial was missing a large

3

portion of the audio recording and that, following Sweetland's trial, a copy of the videotape containing the complete audio recording was shown to an unnamed investigator from OIG but never disclosed to the plaintiffs.

On December 12, 2008, citing the Memorandum and Opinion, Sweetland requested that the OIG remove its report from its website, stating that the report "contains materially false or misleading statements." The OIG reopened its investigation and, in a letter to Sweetland's attorney, affirmed the essential findings of its report, concluding that bond counsel had not given an opinion to NAED or to Sweetland that the ISP was an appropriate use of bond funds. The OIG, accordingly, denied Sweetland's request to remove the report from its website.

Plaintiffs brought their civil case in Bristol County Superior Court. The matter was removed to this Court on February 12, 2010. The plaintiffs counsel noticed the deposition of Assistant Deputy Inspector General Daniel O'Neil. On July 2, 2010, the OIG filed the instant motion to quash.

*Discussion*.

The OIG asks this Court to adopt an evidentiary privilege, allegedly recognized under Massachusetts law, that would prevent O'Neil from appearing at a deposition and from providing any testimony regarding the criminal investigation of the plaintiffs. The Court of Appeals for the First Circuit has set forth a two-part test for determining whether a federal court should adopt a state evidentiary privilege. In re Hampers, 651 F.2d 19, 22-23 (1st Cir. 1981). First, the court must determine whether the state recognizes the asserted privilege. Id. at 22. Second, the court, in its independent judgment, must determine whether the asserted privilege is "intrinsically meritorious." Id. at 22-23.

4

The OIG contends that the asserted privilege is established by Mass. Gen. Laws ch. 12A, § 13, which states in relevant part that "[a]ll records of the [OIG] shall be confidential . . . ." The OIG does not, however, reference any Massachusetts authority interpreting § 13 and this Court can find none. The OIG, therefore, asks this Court to conclude that the Massachusetts state courts would interpret the language of § 13, which speaks only to the confidentiality of OIG records, to encompass an evidentiary privilege shielding all deposition testimony from discovery. The Court declines to do so.[1]

Assuming, however, that the state would recognize such a privilege, the Court must also determine whether the privilege is intrinsically meritorious in the Court's independent judgment. To evaluate the intrinsic merit of a privilege, the Court must determine (1) "whether the communications originate in a confidence that they will not be disclosed"; (2) "whether this element of confidentiality is essential to the full and satisfactory maintenance of the relation between the parties"; (3) whether "such a relationship . . . is a vital one, which ought to be sedulously fostered"; and (4) "whether the injury that would inure to the relation by the disclosure of the communications would be greater than the benefit thereby gained for the correct disposal of litigation." Hampers, 651 F.2d at 23 (internal quotations and alterations omitted).

In addressing the above-stated factors, the OIG contends that the asserted privilege is

---

[1] Massachusetts case law seems to indicates that § 13 would not create a privilege. Other confidentiality statutes that have been construed to encompass evidentiary privileges either explicitly use the term "privilege" or contain provisions referring to legal proceedings. Commonwealth v. Vega, 866 N.E.2d 892, 895 (Mass. 2007); see also Commonwealth v. Senior, 744 N.E.2d 614, 618 n.5 (Mass. 2001); Commonwealth v. Tripolone, 681 N.E.2d 1216, 1217-1218 (Mass. 1997); Commonwealth v. Two Juveniles, 491 N.E.2d 234, 235 n.1, 237 (Mass. 1986); Commonwealth v. Collett, 439 N.E.2d 1223, 1226 (Mass. 1982). Section 13 does not contain the word "privilege" nor any reference to legal proceedings.

intrinsically meritorious because (1) the OIG "represents to people who provide information to or cooperate with the OIG that its investigation would remain confidential"; (2) "future investigations would be threatened if it were compelled to testify regarding the contents of its record"; (3) the OIG "would be impeded in its ability to ferret out government fraud and corruption"; and (4) "the benefit of disclosure would be unclear."

The Court concludes that the asserted privilege does not meet any of the four above-stated factors. The OIG seeks to quash the subpoena, preventing O'Neil from appearing for a deposition and from providing any testimony. Contrary to the OIG's assertions, there is no indication that any information about which O'Neil might be asked to testify originated in confidence or is essential to a vital relationship that would be harmed if disclosed. Accordingly, the Court concludes that the asserted privilege lacks intrinsic merit.

Furthermore, the OIG implicitly concedes that shielding all testimony from discovery is not necessary to achieve its asserted justifications for the privilege. At the motion hearing, the OIG stated that it would be willing to answer interrogatories. Thus, the disclosure of at least some information is permitted. The OIG contends that its main concern is that some disclosures may reveal information about informants or investigative techniques that could, in turn, compromise its public interest in effective law enforcement. A qualified law enforcement privilege, however, already exists in this Court to address such a potential concern. Roviaro v. United States, 353 U.S. 53, 59-60 (1957); Puerto Rico v. United States, 490 F.3d 50, 62-64 (1st Cir. 2007); United States v. Cintolo, 818 F.2d 980, 983-84 (1st Cir. 1987). The law enforcement privilege, however, is not absolute and should be invoked on a question-by-question basis. See Puerto Rico, 490 F.3d at 64-65; see also United States v. Rafia Feghi Yerardi, 192 F.3d 14, 21

(1st Cir. 1999) ("Customarily, issues of privilege are resolved on a question-by-question basis, as the privilege may be justified as to some questions but not as to others.").

Lastly, even if a privilege preventing O'Neil's appearance and testimony were recognized by this Court, such a privilege has been waived. Voluntary disclosure of privileged material results in a waiver. See United States v. Mass. Inst. of Tech., 129 F.3d 681, 684-86 (1st Cir. 1997); see also Roviaro, 353 U.S. at 60 ("[O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable."); Puerto Rico, 490 F.3d at 66. The OIG has already disclosed substantial information about its investigation by posting a comprehensive report on its website and by sending a letter regarding its follow-up investigation to Sweetland's attorney. Furthermore, O'Neil testified regarding the investigation during Sweetland's trial and another member of the OIG testified regarding the investigation during a motion hearing prior to the plaintiffs' trials. Accordingly, since some information has already been disclosed, the blanket assertion of the privilege has been waived.

The OIG is a critical witness, for its investigation developed evidence which provides the grounds for both the plaintiffs' causes of action and the defendants' defense. All parties seek its testimony. O'Neil must appear and testify in order to achieve a fair resolution of this dispute.

The Office of the Inspector General's Motion to Quash the Subpoena to Testify at a Deposition in a Civil Action (Docket No. 36) is hereby DENIED.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge