UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
BRUCE BLISS, ET AL.,

       Plaintiffs

      v.      CIVIL ACTION NO.:
             10-10252-EFH

MARK FISHER, ET AL.,

       Defendants.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# **MEMORANDUM AND ORDER**

January 31, 2012

HARRINGTON, S.D.J.

  This matter comes before the Court on the Defendants' motions for summary judgment. The case arises from the criminal prosecution of the Plaintiffs, three former commissioners of the North Attleborough Electric Department ("NAED"), for their alleged misuse of certain municipal bond funds. The Defendants are the Town of North Attleborough, the NAED and various North Attleborough town officials, including members of the North Attleborough Board of Selectmen, whom Plaintiffs assert facilitated a baseless criminal prosecution against them. Plaintiffs claim violations of 42 U.S.C. § 1983, Mass. Gen. Laws ch. 12, § 11I, as well as malicious prosecution and reckless or intentional infliction of emotional distress under Massachusetts common law. For the reasons set forth below, the Court allows the Defendants' motions for summary judgment.

*Background.*

The parties have submitted a comprehensive record which the Court has fully reviewed. The extensive circumstances which led to the present lawsuit have been, in large part, set forth in two prior discovery rulings. See Bliss v. Fisher, 714 F.Supp.2d 223 (D.Mass. 2010); Bliss v. Fisher 743 F.Supp.2d 25 (D.Mass. 2010). To resolve the present issues before the Court, however, only a brief factual account is necessary. The following undisputed material facts are set forth with the summary judgment standard in mind, viewing the record in the light most favorable to the Plaintiffs.

Plaintiffs were commissioners of the NAED, a publically-owned utility. The day-to-day operations of the NAED are handled by a general manager, who reports to the three-member board of commissioners. At times relevant to this action, David Sweetland was the general manager of the NAED.

In 1988, the Town of North Attleborough approved a twelve million dollar bond to make capital improvements to the Town's electric service. The article authorizing the bond listed five projects for which the bond proceeds could be used. By 1996, a large portion of the bond funds remained unused and the NAED began considering projects on which those funds could be expended. In September of 1996, the Town's legal counsel wrote a letter to Sweetland, which was, in turn, forwarded to the Plaintiffs, iterating the fact that the use of the bond funds for any project not among the five listed in the article could only be authorized by a Town Meeting vote. See Mass. Gen. Laws ch. 44, §§ 1, 7-8, 16, 20. Sweetland also sent letters to the Plaintiffs setting forth this fact on July 12, 1996 and January 26, 1998.

In May of 1998, Sweetland presented to the Plaintiffs a memorandum outlining a

telecommunications business plan that would install technologies enabling the NAED to become an Internet Service Provider (the "ISP project"). On May 21, 1998, the Plaintiffs voted unanimously to proceed with the ISP project and, between 1998 and 2004, the NAED made expenditures totaling approximately four million dollars to develop the ISP project. NAED invoices for the ISP project, approved by the Plaintiffs, were stamped with a "bond fund" notation when submitted to the Town Accountant for payment. The ISP project was not among the projects listed in the 1988 article and no Town Meeting vote was taken that would have authorized the use of the bond funds for the ISP project.

State law makes it a crime for a town officer to knowingly direct or authorize the use of bond funds for an unauthorized purpose. See Mass. Gen. Laws ch. 44, §§ 20, 62. In 2004, the State's Office of the Inspector General launched an investigation into the matter and issued a report concluding that the Plaintiffs and Sweetland had violated state law. The matter was, in turn, referred to the District Attorney's office and a clerk-magistrate found probable cause to issue complaints against the Plaintiffs and Sweetland. A Massachusetts District Court judge subsequently found probable cause to deny a motion to dismiss that was filed by the Plaintiffs.

Sweetland's trial was severed from the Plaintiffs' trial and proceeded first. On the third day of Sweetland's trial, an allegedly exculpatory videotape of a 1998 public meeting of the Board of Selectmen was discovered by defense counsel. As explicated below, the Plaintiffs' present claims hinge on the significance of this videotape, namely whether it would have negated a finding of probable cause to proceed with the prosecution against the Plaintiffs. The videotape depicts Sweetland, in the presence of the Plaintiffs, telling the North Attleborough Board of Selectmen about the ISP project. The videotape contains the following exchange between

3

Sweetland and the Board of Selectmen regarding the use of the bond funds for the ISP project:

<u>Sweetland</u>: We're doing two things at once: we're doing internet with dollop (phonetic) counts and we're doing the fiber optics [referring to the ISP project]. So when we put it all together, it's two here and two there. And that is the reason for the four million dollars. Also, that includes the start-up capital and to cover the first couple of years of losses for the revenue side. The business plan projected that it would be about thirty months before there was positive net income, so we had to finance that as well.

<u>Selectman Fisher</u>: Now, this four-million-dollar bond issue that we signed was part of a bigger bond authorization at town meeting. Correct?

<u>Sweetland</u>: We were authorized many, many years ago for twelve million dollars, and - -

<u>Selectman Fisher</u>: And this is the end of it, if I - -

<u>Sweetland</u>: That's correct.

As a result of the discovery of the videotape, the prosecution withdrew the complaint against Sweetland and the trial judge entered a finding of not guilty. Despite the termination of Sweetland's case, however, the prosecution against the Plaintiffs proceeded. The Plaintiffs were ultimately found not guilty after the trial judge granted a motion for a directed verdict.

The Plaintiffs filed the present action in the Massachusetts Superior Court on January 8, 2010. The matter was removed to this Court on February 12, 2010. The complaint alleges that the Defendants violated § 1983 by (1) prosecuting them in retaliation for exercising protected speech in violation of the First Amendment; (2) withholding exculpatory evidence in violation of

Brady v. Maryland, 373 U.S. 83 (1963); and (3) maliciously prosecuting them in violation of the Fourth and Fourteenth Amendments. The complaint further claims parallel violations under the analogous provision of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §11I, as well as common law claims for malicious prosecution and reckless or intentional infliction of emotional distress. The complaint also includes a count of municipal liability under § 1983 against the Town.

*Analysis*.

The Plaintiffs' malicious prosecution claims, First Amendment retaliatory prosecution claims, and emotional distress claims hinge on the issue of whether probable cause existed to institute criminal proceedings. Specifically, those claims are predicated on the allegation that criminal complaints would not have issued had the videotape discovered at Sweetland's trial been disclosed to the clerk-magistrate at the time of the show-cause hearing. Without necessitating any further analysis, these claims fail for the simple reason that the videotape does not, as Plaintiffs assert, negate a finding of probable cause. In fact, the videotape bolsters such a finding.

Probable cause has been defined as "'such a state of facts in the mind of the defendant as would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion,' that the plaintiff has committed a crime." Bednarz v. Bednarz, 27 Mass.App.Ct. 668, 672, 542 N.E.2d 300, 302 (Mass.App.Ct. 1989) (quoting Lincoln v. Shea, 277 N.E.2d 699 (Mass. 1972)) (internal alterations omitted). The elements of the criminal violation under which the Plaintiffs were prosecuted in state court are (1) the knowing (2)

5

direction or authorization of the use of bond funds (3) for an unauthorized purpose. See Mass. Gen. Laws ch. 44, §§ 20, 62.

The videotape depicts Sweetland, in the presence of the Plaintiffs, telling the Board of Selectmen about the use of the bond funds for the ISP project. Under Massachusetts law, however, the Board of Selectmen could not have authorized the use of the bond funds for the ISP project; that authorization could only have come from a Town Meeting vote, a fact repeatedly conveyed to the Plaintiffs. Thus, the Board of Selectman's knowledge of the use of bond funds for the ISP project is immaterial to a finding of probable cause. See Mass. Gen. Laws ch. 44, §§ 1, 7-8, 16, 20.

More significantly, however, the videotape actually tends to establish two essential elements of the crime, namely that the bond funds were actually used for the ISP project and that Plaintiffs knew that the funds were being used for the ISP project. The videotape in those important respects supports a finding of probable cause.

Furthermore, both the magistrate and the trial judge had significant pieces of evidence before them supporting each essential element of the crime when determining that probable cause existed, including, among other things, ISP project invoices that were approved by the Plaintiffs and submitted for payment to the Town with "bond fund" notations, as well as letters addressed to the Plaintiffs, iterating the fact that the use of bond funds for any project not among the five listed in the article could only be authorized by a Town Meeting vote. The videotape supplements this evidence. The Court, therefore, holds that Plaintiffs have failed to show a lack of probable cause and that the record supports a finding of probable cause as a matter of law. See Maher v. Town of Ayer, 463 F.Supp.2d 117, 120-21 (D.Mass. 2006) ("[W]here the historical

facts are established or undisputed, the issue [of probable cause] becomes a mixed question of law and fact suitable for determination by the court.").

The absence of probable cause is a required element of both malicious prosecution claims, Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001), and First Amendment retaliatory prosecution claims, Hartman v. Moore, 547 U.S. 250, 265-66 (2006). Since Plaintiffs here have failed to show that probable cause was lacking, those claims are dismissed.[1]

Plaintiffs' emotional distress claims require, among other things, a showing "that the [Defendants'] conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community." Howell v. Enter. Publ'g Co., LLC, 455 Mass. 641, 920 N.E.2d 1, 28 (2010) (internal omissions and quotation marks omitted). Since the Plaintiffs have failed to show a lack of probable cause, the Defendants' alleged instigation of the Plaintiffs' prosecutions cannot be considered extreme and outrages or beyond the bounds of decency. Accordingly, those claims are dismissed.

To the extent Plaintiffs claim that the alleged withholding of the videotape constitutes a violation of the rule set forth in Brady v. Maryland, 373 U.S. 83, 87 (1963), no such claim can be maintained as the Plaintiffs were made aware of the videotape prior to their trial and have made no argument or showing that any delay in its disclosure caused prejudice. United States v. Watson, 76 F.3d 4, 8 (1st Cir. 1996).

Finally, since Plaintiffs have not set forth evidence establishing the alleged underlying

---

[1] Plaintiff's First Amendment retaliatory prosecution claims also fail because the record contains no evidence that the prosecution was instituted, as alleged in the complaint, as a retaliation for the Plaintiffs' opposition to a town charter change that would have given the Board of Selectmen control of the NAED.

7

constitutional violations, their municipal liability claims likewise fail. Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001) (holding that a claim for municipal liability under § 1983 requires, inter alia, proof of an underlying constitutional violation).

The Defendants' Motions for Summary Judgment (Docket Nos. 52, 55 and 62) are, hereby, ALLOWED. The Case is dismissed.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge